Missouri, Kansas & Texas Railway Company of Texas v.
Henry Schroeder.

Decided October 27, 1906.

**1.—Personal Injuries—Release—Evidence—Estoppel.**

Evidence considered, and held insufficient to sustain an allegation of release by express agreement of a claim for damages. While the evidence might have been sufficient to support a finding that the plaintiff was estopped from prosecuting his claim, release by estoppel not having been plead, the court properly refused to submit such issue.

**2.—Passenger on Freight Train—Degree of Care.**

The degree of care required of a railway company in the transportation of passengers is not affected by the character of the train upon which the passenger is carried, though the liability of the carrier for injury to a passenger would not extend to the increased risks necessarily incident to riding upon a freight train properly equipped and handled, such increased risk being assumed by the passenger when he selects that mode of travel.

**3.—Freight Rate—Fraud of Shipper.**

In the absence of evidence tending to show that a shipper knew that there was a difference in the freight rate on "immigrants' outfits" and other freight, and that he fraudulently procured his goods to be shipped as an "immigrant outfit" to secure the reduced rate and free transportation for himself, the exclusion of evidence as to what constituted "immigrants' outfits" was harmless.

**4.—Several Items of Injury—Insufficient Evidence as to One—General Verdict.**

Where the plaintiff claims damages for several items of injury, all of which are submitted to the jury by the charge of the court, and the evidence is insufficient to support a finding against defendant as to one of such items, and the jury returns a general verdict against the defendant, the entire verdict must be set aside.

ON REHEARING.

**5.—Negligence—Loss of Arm—Sufficiency of Evidence.**

Evidence reconsidered, and held sufficient to support a finding by the jury that the loss of plaintiff's arm was due to the negligence of defendant's employes, and that the verdict was not excessive.

Appeal from the District Court of Colorado County. Tried below before Hon. M. Kennon.

*J. T. Duncan* and *J. F. Wolters,* for appellant.—One who fraudulently attempts to secure transportation by attempting to pass himself off as one entitled to be carried without a ticket, or by representing that he is a person entitled to transportation by such fraudulent actions, such party does not become a passenger, although he is being transported. And it matters not whether he has actually perpetrated a fraud by deceiving the conductor of the train, or is on the train with intent of securing transportation by doing so. 6 Cyc., p. 538.

Where a passenger on a railway train, instead of occupying a coach provided for passengers, remains without necessity therefor in the baggage car, knowing the fact that he is in more danger there than in a passenger coach, and thus remaining, receives injury in the wreck of the train which he would have avoided had he remained in the passenger coach, is guilty of contributory negligence and can not recover on ac-

count of injury received under such circumstances.   Houston & T. C.
Ry. Co. v. Clemmons, 55 Texas, 88.

*Grobe & Boyd,* for appellee.—Where the injured party was rightfully
in a freight car, he was not required to leave it so as to avoid injury
from the unnecessary or improper movement of it in switching, and his
failure to leave the car while in the switching yard did not render him
guilty of contributory negligence.   Texas & P. Ry. Co. v. Adams, 6
Texas Ct. Rep., 653.

The degree of care that the carrier is required to exercise toward the
proper handling and transportation of the passenger remains the same
from the time the relation of carrier and passenger is established until
the passenger arrives at his destination; and it is immaterial whether
the injury occur while the car in which the passenger is traveling is
standing in the switch yards of the carrier or is being propelled along
the road.   Dallas Consolidated Electric Railway Co. v. Broadhurst,
5 Texas Ct. Rep., 74; Ft. Worth & D. C. Ry. Co. v. Kennedy, 35 S.
W. Rep., 335; International & G. N. Ry. Co. v. Welsch, 86 Texas, 203;
St. Louis S. W. Ry. Co. v. Duck, 5 Texas Ct. Rep., 745; 6 "Cyc." pp.
624, 625, also note 14.

A railway company owes the same degree of care to a passenger on
a freight train that it owes to one on any other train; and a passenger as-
sumes only the increased risk incident to the proper handling of said
train.   6 "Cyc.," pp. 594, also 652, 653, 624, 625, also note 14, p. 625;
Mexican Central Ry. Co. v. Lauricella, 26 S. W. Rep., 301, 28 S. W.
Rep., 277; Ft. Worth, etc., Co. v. Rogers, 24 Texas Civ. App., 383.

PLEASANTS, Associate Justice.—This is a suit to recover damages
for personal injuries brought by the appellee against the appellant.   The
petition alleges in substance that plaintiff was injured while a passenger
upon one of defendant's freight trains at Smithville, Texas, on Septem-
ber 29, 1904, by the negligence of defendant's employes in running a
car against the car in which plaintiff was sleeping with such force as
to cause plaintiff to be thrown violently against the floor and side of
said car.   The nature and extent of the injuries for which recovery is
sought is set out in the petition as follows:

"That by being thrown violently against the walls, the floor and
doors of said car, and against obstacles and articles contained in said
car as aforesaid, plaintiff's head, the back of his neck, his back, his left
side, breast, arm and hand were seriously and permanently bruised and
injured in this, to wit, his head was seriously bruised, the back of his
neck and shoulders and upper portion of his back were seriously bruised
and injured, producing injury of the spinal cord; his left breast and
left side were bruised and injured, his left arm hurt, his left hand was
sprained and seriously bruised and lacerated, and his legs were badly
bruised and lacerated, the skin being broken and torn, and the muscles,
tendons and ligaments of his back, breast, neck and legs and hand were
torn, bruised and injured."

"That as a result of the said injuries plaintiff suffered great and ex-
cruciating mental and physical pain, that plaintiff has suffered great
physical pain continuously since the date of the said injuries to the

present time; that the injuries to his left hand and arm continued sore and refused to yield to treatment; that about one month after said injuries were received said hand and arm became highly inflamed and swollen, and caused him great suffering; that the said injuries to his hand and arm grew steadily worse, affecting the entire arm, and caused him to undergo the most intense suffering and pain, and greatly endangered his life; that on the 23d day of December, 1904, it became necessary, in order to save his life, to amputate his said arm, and on said last named date said arm was amputated about three inches below the shoulder; that the diseased condition of his said hand and arm, and the intense suffering caused thereby, and the said amputation of the arm were caused directly and proximately by the injuries received in the said hand and arm as aforesaid."

The amount sued for as compensation for the injuries alleged is $15,000.

The defendant answered by general demurrer and general denial, and by special pleas of contributory negligence and plea of accord and satisfaction in which it is averred in substance that the car in which plaintiff was riding at the time he claims to have been injured was a freight car containing freight which had been shipped from Livermore, Iowa, to San Antonio, Texas, by J. C. Conner; that both Conner and plaintiff at that time resided in Texas and that they fraudulently represented to the initial carrier that the car contained an "immigrant's outfit" when in truth and in fact the freight so shipped was not an immigrant's outfit and could not be so classified under the rules of the interstate commerce commission authorizing the shipment of immigrant's outfits from one State to another at reduced transportation charges; that plaintiff and said Conner both knew that the car did not contain an immigrant's outfit and falsely represented such to be the fact for the purpose of obtaining reduced rates on said freight and securing free transportation for plaintiff from Livermore to San Antonio under the rules of the railway company which authorize a person shipping an immigrant's outfit to accompany such shipment in person or to send an agent or representative with the shipment to look after and care for same, and that but for said fraud plaintiff would not have been permitted to accompany said shipment and to ride in the car containing same; that by riding in said car plaintiff placed himself in a more dangerous position and was more liable to receive injury and damage than if he had ridden in a passenger car, and by reason of the facts before stated was guilty of contributory negligence; that upon the arrival of said car at San Antonio defendant discovered the fraud which had been practiced by Conner and plaintiff and refused to deliver the freight contained therein to the said Conner unless he would pay the difference between regular rates fixed for said freight and rates which he had paid upon same as an immigrant's outfit. That at that time the plaintiff did not appear to be suffering from any injuries or bruises. That he was able to walk around, converse and talk, but did complain of a small bruise between his knee and ankle. "That it was some day or two before the difference in this freight was settled, the plaintiff and the said Conner agreeing that if this defendant would deliver the said Conner his freight without

charging him with the difference in the freight rate as claimed by the defendant, that the plaintiff and Conner would release this defendant from any and all damages which the plaintiff or Conner may have received during the conveyance of said property, either to the person of plaintiff or to the property of Conner. This contract being entered into voluntarily, and the defendant relying upon the same, turned over said freight to the said Conner, without receiving any excess in the difference of said freight, and this defendant says that said settlement, based upon a valuable consideration moving to the said Conner, was a valid settlement, and that the plaintiff is now estopped by virtue thereof from asserting any claim for damages done him by said carrier on said journey. This defendant says that the said Conner and the plaintiff were guilty of fraudulent concealment of the nature and value and character of the goods, for the purpose of evading the payment of the increased reasonable charge for transportation, and that the plaintiff by such fraud procured himself to be shipped free of charge as freight instead of paying his transportation on the regular modes of conveyance of persons who travel as passengers. This defendant says that it is relieved from liability either for the injuries of the said plaintiff or to the property of said Conner. This defendant says that the plaintiff would not have been injured if he had not placed himself voluntarily in a place of danger. That the plaintiff knew that the car in which he was placed was set out in the yards at Smithville, and he knew that said car had to be switched and placed in another train, in order that the same might be carried to San Antonio, the destination of the same. That he slept in said car, along with the other freight, and took his chances of being injured by the bumping which is necessarily incident in making up trains and the switching of cars. This defendant says that the plaintiff and Conner actively misled it and its connecting carriers as to the nature and value of said goods, to their prejudice, and for that reason the plaintiff and said Conner, acting together, are either or both precluded from any recovery herein."

The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiff in the sum of $5,000.

The first assignment of error complains of the refusal of the trial court to give a special charge requested by the appellant in which it sought to submit to the jury the issue of whether there had been an accord and satisfaction as alleged in the answer.

The evidence adduced by the defendant upon this issue was to the effect that after the car reached San Antonio defendant's agent at that place discovered that it had been shipped under a false bill of lading and the freight therein contained was not an immigrant's outfit and not entitled to the reduction in freight rates allowed on immigrant's outfits, and that he refused to deliver the freight to Conner without the payment of full rates and the fare for the transportation of appellee from Livermore to San Antonio. After several unsuccessful endeavors on the part of Conner to have the freight turned over to him without further charge he, in company with appellee, went to the office of defendant's agent at San Antonio to again discuss the matter. During this interview Con..er told the agent that appellee had been injured at Smithville by the negligence of the defendant's employes in handling

the train as alleged in the petition, and at Conner's request appellee pulled up his trousers' leg and exhibited to the agent a bruise on his leg. The remainder of this interview and the subsequent action of the parties in regard to the subject matter thereof is thus detailed by the agent:

"Mr. Conner said that he would like to have his car and that he did not want any trouble with the railroad company and that his man had been roughly handled and mistreated, and he also spoke of some mistreatment at the station; something about switching the car. He said, 'If you will let me have the car everything will be all right. We will forget about any trouble or injuries that have been sustained.' Mr. Schroeder was present. I do not think he said anything. Whether he did or did not do it, at least I thought Mr. Schroeder was included. I thought his silence gave consent. I told him I would take the matter up. On Tuesday Mr. Conner came to my office to sign the release and told me Mr. Schroeder had gone home. I had Mr. Davis, our local attorney, to draw up a form of release to be signed, and I then asked Mr. Conner for Mr. Schroeder's signature, and at first I stood out that I would not let him have the car until I had the release. I knew he could not sign for Schroeder, and I told him I would not let him have the car, and he said that he would assist in every way he could to get Schroeder to sign the release, and I thought he would do so. I then asked him to write a letter to Mr. Schroeder, and he told me that he would not do it, but for me to dictate one, and I did, and he signed it, and I enclosed a one dollar bill and the release to Mr. Schroeder. Conner in Schroeder's presence said, 'we will release any claim that we have.' It was my understanding that Schroeder was consenting, although I can't say that Schroeder ever said that he would release it. He was present and heard the proposition. We were all sitting around my desk, and he did not demur to it or make any objection to it. And I understood that he acquiesced in it, and the matter of sending the release was to get the record straight. I did not know on Saturday that Mr. Schroeder was going to leave town."

Both Conner and appellee swear positively that no offer was made by appellee or by Conner that appellee would release his claim for damages if appellant would release Conner's freight and that nothing was said about appellee releasing his claim further than that after the appellant had agreed to release the freight and Conner had executed his release for any claim he might have for damages he, Conner, at the request of appellant's agent wrote to appellee inclosing a written release and $1.00 furnished by the agent, and requesting him to sign and return the release, which appellee promptly declined to do and returned the dollar to Conner.

We do not think this evidence raises the issue of a release by appellee as pleaded by appellant. If the jury should find that the testimony offered by appellant on this issue was true, it would only establish a release by the appellee by estoppel and it is not so pleaded. The answer does aver that appellee is "estopped" but the estoppel pleaded is predicated upon the express agreement of appellee to release his claim. The fact that appellee was present and remained silent when Conner proposed to release appellant from all liability for injuries received by ap-

pellee is not pleaded, and no estoppel is pleaded against appellee's right to show that he did not enter into the agreement alleged. Under the pleadings and evidence the trial court did not err in refusing to submit the issue covered by the requested charge.

Had the issue been properly raised by the pleadings and evidence the charge was properly refused, because it does not state what the proposition was that was submitted by Conner to the appellant further than that it was a proposition for the release of the freight without the additional charges, and authorizes the jury to find for the defendant without finding that appellee had agreed to release his claim for damages in consideration of the delivery of the freight to Conner. This charge is probably incorrectly copied in the record, but as it there appears it is manifestly inaccurate and incomplete in the particular above mentioned. The evidence does not justify the holding, as a matter of law, that appellee was guilty of contributory negligence and the trial judge properly refused to instruct the jury to return a verdict for the defendant on that ground.

The court did not err in instructing the jury that the measure of care required of a railroad company in transporting passengers upon a freight train was "that degree of care which a person of great prudence would exercise under the same circumstances for the safe transportation of such passenger." The degree of care required of a railway in the transportation of passengers is not affected by the character of the train upon which the passenger is carried, though the liability of the carrier for injury to a passenger would not extend to the increased risks necessarily incident to riding upon a freight train properly equipped and handled, such increased risk being assumed by the passenger when he selects that mode of travel. This modification of defendant's liability is contained in the charge of the court and as thus modified appellant can not complain of the charge.

Upon the trial appellant introduced in evidence the depositions of several witnesses who testified as to what an "immigrant's outfit" was, as that term is used in the classification of railroad freight, and also a copy of the schedules, freight rates and classification promulgated by the Western Classification Company of which both appellant and the carrier my whom the contract with Conner was made, were shown to be members. After this evidence had been introduced it was excluded on motion of appellee on the ground that it was not shown that said schedules and rates were posted in the office of the carrier at the place where the contract of shipment was made as required by the rules of the Interstate Commerce Commission.

We do not think the exclusion of this evidence, if error, was harmful to appellant. Both Conner and appellee testified, and their testimony on this point was uncontradicted, that the agent of the road with whom the contract of shipment was made was fully apprised of the character of freight which was shipped; that he was present when the car was loaded and weighed a portion of the freight; that Conner did not represent that the shipment constituted an immigrant's outfit and did not request that it be shipped as such and did not know about the difference in the rates allowed upon "immigrant's outfits" and other freight shipments, and that he made the contract of shipment upon the rates given

him by the agent and under a bill of lading prepared by said agent with full knowledge of the character of freight to be shipped.

While we do not understand that knowledge on the part of the shipper, that the rate for which the shipment is agreed to be made is unauthorized, is necessary in order to relieve the carrier from an illegal and unauthorized contract made with its agent, such knowledge is essential to show fraud on the part of the shipper in procuring the contract. The only purpose for which the excluded evidence was introduced was to show fraud on the part of Conner and appellee in obtaining a rate to which they were not entitled, and as this evidence did not tend to show fraud in the absence of testimony showing or tending to show a knowledge on the part of Conner or appellee of the difference in the rate on "immigrant's outfits" and similar freight shipped on an ordinary bill of lading; the exclusion of the evidence could not have injured appellant.

Under appropriate assignments the appellant assails the verdict on the ground that the evidence is insufficient to support the finding that the loss of appellee's arm was a direct and proximate result of the injuries received by him on Spetember 29, 1904, through the alleged negligence of appellant, and because the verdict is excessive in amount. We think these assignments should be sustained. There is evidence to the effect that appellee was injured as alleged by him on September 29, 1904, by being thrown against the floor and side of the car, but the injuries thus received were at the time comparatively slight. It is true he testified that he was badly bruised and that his side, neck and spine were injured, and that he still suffers from the effects of such injuries, but if we were inclined to hold that a verdict for $5,000 for the injuries thus shown would not be so unreasonable as to justify the conclusion that it was the result of passion or prejudice, we could not affirm the judgment in this case because the issue of damages for the loss of appellee's arm was submitted to the jury, and the verdict being a general one in favor of appellee for the sum of $5,000 it is impossible to say what amount was found by the jury for the loss of the arm and what amount for the other injuries, and the evidence being insufficient to sustain any verdict for the loss of the arm the entire verdict must be set aside.

While it is not alleged in the petition that the attack of pleurisy, which appellee had in December, or the abcess which subsequently developed on his side, were proximate results of the injuries received by him on September 29, testimony as to the suffering and injury caused appellee by the pleurisy was introduced and must have been considered by the jury in fixing the amount of the verdict. Several physicians testified in the case, and the strongest statement by any of them in support of the theory that the loss of the arm, the attack of pleurisy or the abcess in appellee's side was caused by the injuries received on September 29, was that the injuries shown could have produced such results. Appellee's expert witness, Dr. Harrison, in answer to a question propounded by counsel for defendant stated that while it was possible that the pleurisy which developed in appellee on December 6 was caused by the injuries received by him on September 29, it was not probable. Without setting out the evidence in detail it is sufficient to

state that upon the issue of whether the pleurisy, abcess and loss of appellee's arm was caused by the injuries received by him on the 29th of September, the probative force of the testimony in support of appellee's theory is not sufficient to make it reasonably probable that any of these results were caused by said injuries.

It is unnecessary to notice the remaining assignments of error presented in appellant's brief further than to say that they are without merit.

For the reasons before indicated the judgment of the court below is reversed and the cause remanded.

### ON REHEARING.

On a former day of the term we reversed the judgment of the court below in this case on the ground that there was no evidence to authorize the finding that the loss of appellee's arm was a proximate result of the injuries alleged to have been inflicted upon him by appellant, and the loss of the arm having been submitted to the jury as an element of damage the general verdict in favor of appellee for $5,000 should be set aside. In his motion for rehearing counsel for appellee has called our attention to portions of the testimony contained in the 500 page transcript of stenographer's notes which was not called to our attention in his brief, and which we think is sufficient to sustain a finding that the loss of appellee's arm was a direct result of the injuries caused him by appellant.

The appellee testified that when he was thrown against the wall and floor of the car, in which he was riding on September 29, 1904, by the violent striking of said car by another car which was being switched by the employes of defendant, he received an injury to one of the fingers on his left hand. This injury consisted of a bruise and an abrasion of the skin on said finger. He further testified that the finger continued sore and the abrasion did not heal, and that it finally became so bad that the finger had to be amputated. His wife testified that when appellee reached home a few days after the injury she noticed the sore on his finger, and that this finger remained sore and swollen continuously until it was amputated. This testimony taken in connection with the undisputed testimony of the physicians who were witnesses in the case, that the loss of appellee's arm was due to blood poisoning which first developed in this finger and that the germ which caused the disease probably entered through an abrasion or sore on the finger, is sufficient to sustain a verdict for damages against appellant for the loss of appellee's arm. With this element of damage in the case the verdict is not excessive.

Upon the whole case we conclude that the evidence is sufficient to sustain the finding of the jury that appellee was injured at the time and under the circumstances alleged in his petition; that such injury was due to the negligence of appellant's employes as alleged; that appellee was not guilty of contributory negligence, and that he has been damaged in the amount fixed by the verdict.

Our former opinion overruled all of the assignments of error except those assailing the verdict on the ground that there was no evidence to

authorize a finding against appellant for the loss of appellee's arm, and that the verdict was excessive. Having now reached the conclusion that we erred in sustaining these assignments it follows that our former order reversing the judgment should be set aside and judgment rendered affirming the judgment of the trial court, and it has been ordered accordingly.

*Affirmed.*

Writ of error refused.